Good morning, Your Honors. May it please the Court, Dennis Hyun for Appellant and Appointment of Shirley Nichols. Plainly put, the District Court's order granting summary judgment must be reversed because the District Court did not follow Ninth Circuit and California Supreme Court law. The law of the Ninth Circuit is clear, clear as day, that for a class action settlement to apply to a subsequent case, that the subsequent case must be based on the identical factual predicate as the class action settlement. California Supreme Court law is the same. The California Supreme Court held that... Why isn't this the same factual predicate as the Rainier class action? The Rainier class action was based on misclassification of exempt employees for unpaid overtime off  Was there also miscalculation? There was no miscalculation in Rainier at all. Not even mentioned if you do a global search for miscalculation, you'll not find it anywhere in Rainier. Nichols also has distinct claims for labor code violation, I mean violation of Labor Code 204, timely payment of wages, and wage statement violations for 226A6, 8, and 9 that were never raised in Rainier at all. Rainier was a misclassification case which the district court in its order of granting summary judgment recognized. So the district court... But is that a different theory or actually a different factual predicate? It's a different factual predicate. It's not a different theory because here, well, stepping back in Rainier, we're saying we're misclassified as exempt. We were never paid overtime in the first place. Once we were misclassified, we worked off the clock. Nichols was saying we're already classified as non-exempt. We're already being paid overtime, but we're also getting paid commissions and bonuses. Those commissions and bonuses should be calculated in the regular rate. So it's an entirely different factual predicate. And one example I'd like to point this court to is the Ninth Circuit's holding in Hesse versus Sprint. The plaintiff in that case sued Sprint for different billing errors or different billing surcharges, improper business practices. The Ninth Circuit held that Sprint can be sued for different parts of the bill, a phone bill. If that can be a different factual predicate, then certainly different factual conduct in the Nichols case is a different factual predicate. I think the law is fairly clear as to the requirement that there be the same factual predicate. I'm struggling to understand still why this is a different factual predicate. And as I understand your argument, the Rainier case was about misclassification, right? And she was never misclassified, and so now she's proceeding on a different theory. But if the Rainier case was limited to misclassification, then how can the plaintiff be a part of that settled for the benefits of the class? So it's got to be broader than misclassification because she was never misclassified. She was misclassified as part of Rainier because she was a mortgage consultant. So she's part of the Rainier class, but the Rainier class, you have to understand, goes back to 2003. So the Rainier class includes people who worked as exempt employees from 2003 to 2013. Miss Nichols was exempt for that period, but we're not suing for misclassification. We're not suing, saying we want overtime because she was misclassified. We're saying after you reclassified her, you didn't calculate the overtime rate correctly. That was never raised in Rainier. That was never raised in Rainier. And we also have, setting that aside, we have claims for violation of Labor Code 204, late payment of commissions. That was never raised in Rainier. We have violations of Labor Code section 226A for wage statement violations never raised in Rainier about the hourly rate and the number of hours worked for particular items overtime payment, incentive overtime. That was never raised. And I'd like to also direct the court's attention to Taylor. In Taylor, the plaintiff sought to include miscalculation claims in her settlement. The district court rejected that attempt because the plaintiff in Taylor never said she got these incentive payments. This is the same as the Rainier plaintiffs. There's nothing in the Rainier case where they said, we got these commissions and bonuses. We think that they should have been included in our overtime rate. They never said that. Anywhere in the entire case, you could check the entire record. It's nowhere to be found. But we also have a distinct claims beyond that. So if HESI versus Sprint, if that Sprint case, if one bill can be different parts of a factual predicate, then certainly an employer's conduct regarding overtime practices and also wage statement practices can be different factual predicate. So I would like the court to, basically what the district court here did below was say, class settlement is a general release. Every time you settle a class action, you're part of a class action, you're going to give all your rights. And I ask the court to ask Respondent's Counsel, is this what you're intending to do? Is this what you want to happen? Is for any class settlement to wipe out all claims? How far would it go? There are different parts of the labor code. For example, 1102.5, dealing with whistleblower retaliation. Labor code section 6310, dealing with workplace safety. Would these claims be included as well? Just because I work for you and that's part of the employment relationship, would that be included? The district court erred because it did not follow the Ninth Circuit law. The district court followed general contract law regarding general releases. This was not a general release. I ask the court to ask Respondent's Counsel, are you intending to force a general release? The law of the Ninth Circuit is clear that there is no such thing as general release for class actions or FLSA settlements. Simply because our client signed an FLSA opt-in form does not mean she execute general release. And with respect to the court's question, it is a different factual predicate. And with that said, I also would like to raise the public policy issues. An absent class member, when they get a class notice, they don't know, I mean, to expect them to understand the legal ramifications of a release in Rainier that, mind you, the release period is over 10 years, I believe. And the effective date of the Rainier settlement is the date of judgment. The district court in New York entered judgment in late 2015. So technically, our client released claims in the future after she opted into the FLSA settlement. So that presents its own problems. So that shows what kind of confusion a class settlement can provide. And it's the duty of the courts to protect class members. And that's what the district court below did not do. The district court did not protect the rights of class members to assert different claims based on different factual predicates. So you would characterize it as a general release, even where the release indicated that it was including inaccurate overtime calculations for non-exempt employees? No. What we're arguing is precisely the opposite. We're saying that it's not a general release based on Ninth Circuit law. But that's what Respondent is arguing. And that's what the Rainier case dealt with, misclassification. Misclassification meaning, I'm an attorney, I don't get paid overtime, I get paid salary. If all I'm doing is document review, doing non-exempt work, I'm stapling paper, then I should be paid overtime. That's what the Rainier case is about. Mortgage consultants who are mainly pushing paper who said, I'm getting paid salary, I'm not being paid overtime for anything over eight hours in a day before three hours in a work week. After Citibank reclassified its mortgage employees, what we're saying is you're not calculating the overtime rate correctly because by federal and California law, the overtime rate must include all non-discretionary pay or remuneration. So that is the difference. There's a fundamental difference. And we also have additional claims which were never raised at all in Rainier, including late payment of commissions and CITO 204 states that commissions must be paid in the same pay period as they are earned or all wages. Citibank has a practice of paying them late. We also have wage statement violations that were never raised in Rainier. Namely, the name of the employer, Citibank, Citibank always puts city on its wage statements as opposed to its full legal name, which is required by California law. Citibank also doesn't spell out the hourly rate of incentive overtime payment, which is required by California law. And none of this was raised in Rainier. None of this was raised at all. So you're saying the Rainier operative complaint did not have an allegation of inaccurate calculations? Correct. In Rainier, the complaint, the settlement agreement, every single document in Rainier had none of that. So that's why the identical factual predicate bars application of the district court erred. With that said, if there are any other questions from this court? Thank you, Ken. I'll say the rest of our vote. Thank you. Good morning. May it please the court. Daryl Landy for the appellees, which I will refer to collectively as Citi or Citibank. Judge Fischer's order granting summary judgment for Citibank should be affirmed because Ms. Nichols' signed release was dispositive, as Judge Fischer correctly and expressly held. There's a disconnect here in Appellant's counsel's argument. There is not just a race judicata defense being asserted here, and there was not just a race judicata defense being asserted here. And this court does not need to go there, although we can discuss the identical factual predicate test. Citibank's summary judgment motion asserted two separate and distinct legal defenses. The law afforded both of those defenses to Citibank. One defense was based on common law race judicata principles. That defense is not contractually based. Instead, it relies on the district court's judgment in Regnier, which by operation of law extinguished Ms. Nichols' claims, or would have extinguished Ms. Nichols' claims in this case, had she not signed the opt-in agreement. The other defense, and the defense that Judge Fischer correctly addressed, is a contractually based defense under state law that Ms. Nichols agreed in writing to release her claims in exchange for receiving money. That defense, contractual release, is a defense that Judge Fischer correctly relied upon in her summary judgment order. And to address one of the statements that Ms. Nichols' counsel made, and that they make in their papers, one of the fundamentally false premises in their papers is that Citibank, that appellees are arguing that a general release agreement bars Ms. Nichols' claims. That's not the case. To Judge Settle's point, what we are arguing is the agreement that she signed, which is very clear in its terms, the opt-in agreement that she signed, says that she is waiving her wage and hour claims that she did or could have pled, did plead or could have pled in overtime compensation, including for penalties under state law. That release is very clear, and therefore, as Judge Fischer correctly analyzed, unless it was obtained by fraud or deceit, it's an enforceable agreement. Ms. Nichols' response in the court below was, well, I didn't understand it to include certain allegations. Subjective intent, as I'm sure the court is aware, is not a basis for invalidating a contract when the language in the agreement is clear. And there's a plethora of cases, including Skrbina that Judge Fischer cited, that support that. So what Ms. Nichols' counsel is attempting to do here, and that they've attempted to do in their papers, is conflate the two tests. But there is not a single decision by this court that applies the identical factual predicate analysis or test, or common nucleus of facts test, to analyze whether a contract is enforceable. That's a separate defense. And the test of identical factual predicate, or common nucleus of facts, is a test that applies to res judicata, which is a common law principle that looks whether, by operation of law, a release extinguishes prior claims. Those are two different defenses that we've asserted. And they've completely ignored the defense that the trial court relied upon in granting its decision correctly. In addition, I heard Ms. Nichols' counsel say that the trial court essentially did not Ms. Nichols, by the way, was never misclassified. The reclassification, as is alleged in the first amended complaint in Regnier, occurred in July of 2010. Ms. Nichols' employment began in 2013. All of her claims, and the reason that she received payment in Regnier, and the reason that she was a class member in Regnier, and had the ability to sign this agreement to as a home lending specialist for Citibank. And that's alleged in the complaint. And we can talk about identical factual predicate, but I want to complete the discussion of this agreement that she signed that Judge Sweet approved as part of the preliminary approval process under Rule 23E in Nichols, excuse me, in Regnier. So I heard that Judge Sweet apparently did not protect the class members, and that there is an issue with class members not understanding releases. If that was the case, the entire system of approving class settlements would be completely undermined. There is a process here under Rule 23, and that process was followed in Regnier. But if Ms. Nichols thought that it hadn't been followed, or if she thought that the release was not fair, she had remedies. She could have opted out. She could have sought to intervene. She could have objected to the settlement. She could have, with the benefit of counsel, which she had by the time the settlement was finally approved, she could have filed an appeal in the Second Circuit challenging the release in the opt-in form or in the settlement agreement as somehow too broad. She did not do any of those things. Instead, within weeks of receiving her notice, which she acknowledged, she read the release and she submitted her claim form not once, but twice. She faxed it in right away, and this is in the record, and she mailed it in, and then she accepted her payment. She received the check, and then, again, with the benefit of counsel, on December 2, 2015, instead of saying, you know what, this release is wrong, it's too broad, it's whatever, she cashed the check. And she's entitled to do that, but what she's not entitled to do is what she did nine days later, which is that she went out, having signed a contract that said, I release my claims, and she filed this new lawsuit for claims that she had released nine days earlier, not nine days earlier, but months earlier by signing the agreement, and then for which she had cashed the check. Again, by that time, she had the benefit of counsel. So for all of those reasons, the summary judgment order should be affirmed, because what Ms. Nichols is trying to do here violates principles of contract law based on the agreement that she signed. Again, I don't think it is necessary for this court to address the res judicata issue. However, it is an additional basis for affirming Judge Fischer's decision, and so I'll address it briefly in some of the comments that counsel made. First, the issue here, if we are addressing res judicata, is whether there's an identity of claims. The test is not one for whether there are identical facts. It is an identical factual predicate, and that's true in all of the cases, including Hess. And contrary, just looking at the record, contrary to what my colleague has said, there is a specific allegation in Regnier that addresses the overtime claims at issue here. It's in the record at page 328. It's paragraph 36 of the First Amendment complaint, which alleges that in and around there are separate allegations first regarding misclassification. Then it says, in or around July 18, 2010, defendants reclassified plaintiffs as non-exempt from the overtime requirements of the FLSA and applicable state laws. Thereafter, plaintiffs began receiving some compensation for overtime hours worked, some compensation. That's me paraphrasing. Back to the quote. However, this compensation routinely fell short of what is required under the FLSA and applicable state laws. That is an allegation that non-exempt employees are not receiving or were not receiving all of the overtime that they should be receiving. In addition, with respect to the wage statements, paragraph 41 of the First Amendment complaint in Regnier alleges members of the state law class, and that includes Ms. Nichols, were not provided with accurate wage statements as required by state law. Among other inaccuracies, these statements did not accurately reflect all hours worked, including overtime hours. All of the claims alleged in this case were alleged and disposed of in Regnier. In Res Judicata, it's, and you mentioned this, it involves identical claims and we're dealing with identical factual predicates. Where's the difference? Tell me what the factual predicate is. Sure. The factual predicate in Regnier was, is that home loan, home lending specialists, non-exempt home lending specialists, putting aside the misclassification allegations that relate to HLSs who worked before July 2010, but non-exempt misclassification specialists were not paid overtime or all of their overtime. They were not provided with accurate wage statements. They were not provided various wage and hour violations under state and federal law. Those are claims, aren't they? Yes, based on, the claims are based on supposedly not being paid all of their overtime. Those are the facts. And the alleged harm to Ms. Nichols is the same in both cases. In Regnier, it's alleged that she didn't receive all of her overtime. In this case, it's alleged that she did not receive all of her overtime. And all of the claims flowing from that are claims that are derived from the overtime claim. The wage statements, the late pay, the PAGA penalties, the Private Attorneys General Act penalties, those all flow from the unpaid overtime claims. Same question that I asked earlier. The operative complaint in Regnier did not have an allegation of inaccurate calculation of overtime? It does not use those exact words, but it doesn't need to under the test. It says that they were shorted their overtime. If the tests were exactly the same allegations, and if you look at all of the cases, then it would be a very rare circumstance in which the identical factual predicate or common nucleus of facts apply. What the courts look at, and it's stated in Mopoyo and some of the other cases we cited, is that a common nucleus of facts would the cases conveniently be tried together. And if you look at Ms. Nichols' claims in Regnier, which were asserted, by the way, on her behalf, by two plaintiffs from California who were non-exempt employees during the time period in question, those claims clearly would be tried together. Claims for unpaid overtime and whether the overtime was calculated correctly. And in the process of settling the Regnier case, you'd have to calculate the overtime and determine whether the overtime was calculated correctly. Otherwise, we get into the policy morass of if we're going to split hairs based on an allegation that these specific words were not used in Regnier, then we lose the certainty that we benefit from in settlements. And the courts, which are already bogged down with so many of these wage-hour class actions, are going to have an even more crowded docket. That's the whole purpose of the policy that supports settlements in the first place. I don't know if I answered your question, Your Honor. It was a difficult analysis. I take your answer. Well, and to elaborate on the ability to whether the cases could be conveniently tried together, of course they could. We'd be looking at the same payroll records for the same time periods for the same people, including Ms. Nichols. We'd be looking at the same wage statements. And to say that, well, but in Regnier they didn't allege that the wage statements didn't say the name of the employer. So we're going to look at the wage statements in Regnier, but we're going to have a separate class action here in Nichols to take a look at the same wage statements to see if they say Citibank is the employer, which, by the way, they do. So counsel can make up an allegation that is not true, but say that's a basis for a separate lawsuit. But it doesn't make sense to try those cases together. It's totally inefficient and defeats the purposes of res judicata, which this court very recently in the Amalfitano case said, the doctrine of res judicata ensures the finality of decisions, conserves judicial resources, and protects litigants from multiple lawsuits. That's exactly why, if we're looking at the res judicata analysis in this case, that the decision should be affirmed on that basis as well, in addition to the basis which counsel has not addressed at all, which is that she signed an agreement that's enforceable under California contract law. Thank you. Thank you, counsel. Thank you. Thank you. Just briefly a couple points. I think you heard it from Respondent's counsel's own mouth that the Rainier case did not involve miscalculation. It was off the clock. Judge Fisher's order granting summary judgment recognizes the difference. She says at page 2 of her order granting summary judgment, in Rainier defendants were accused of failing to pay overtime through misclassification and off-the-clock work. Nichols is not alleging any off-the-clock. Nichols is alleging miscalculation of the overtime rate, which Justice settled. You recognized the difference in the allegations. Well, you referenced the order. The district court didn't reach the res judicata issue because she found the release to be dispositive because the release language says any and all known and unknown wage and hour and wage payment claims. So essentially any violation of wage and hour laws were released under this settlement agreement. Justice Nguyen, that's not the law of the Ninth Circuit. Again, Judge Fisher and Respondents looked at general contract law. And Respondent's argument here today, Respondent's counsel's argument, he focused on contract law. The effect of a class settlement is not governed by general contract principles. As the Ninth Circuit said, I believe in Hessia Raine's Posta case, the defendant may have drafted the release as broadly as possible. The language is irrelevant in the release. What we look at are the facts of the cases. Does it meet the identical factual predicate test? That is a test that the district court should have applied. The district court applied contract principles, which plaintiff appellant respectfully submits was wrong. And again, the Rainier case, there's no mention of any late payment of commissions. There's not a single word in the record dealing with late payment of commissions. There's not a single record, I mean, word in the record about inaccurate wage statements. And with respect to Respondent's counsel's argument that the cases could have been tried together, that's not the test. If that was the test, then we wouldn't have Hessie as a published decision of this circuit. Hessie said, you can sue Sprint for different parts of a cell phone bill, different surcharges, your case survives. The district court erred in granting summary judgment in that case. The Ninth Circuit reversed. If different parts of a bill, a cell phone bill, can serve as two different class actions or different cases, then certainly an employer's different conduct, different parts of its conduct relating to different aspects of employment can be two different cases. That is the law of the Ninth Circuit. That's where the district court erred, and that's where Respondent's arguments fall short. And that's why we believe that the district court's order should be reversed. A class action settlement, an opt-in form, is not a contract. It's a form that's required by the FLSA and required by Rule 23. And with all due respect to Respondent, most courts now have an opt-out settlement, but regardless of whether it's opt-in or opt-out, the effect is the same. The effect of a settlement, a class settlement or an FLSA settlement, is based on the language of the underlying case and the settlement documents. If those claims were not raised in the prior case, they cannot extinguish someone else's case. Otherwise, there would be no such thing as an identical factual predicate doctrine. It would just be called the general release doctrine. Why have it? Why make the cases have the same facts? Then you could just say everything is a general release. A class settlement is always a general release. Then why even go through the approval process? No, I think counsel's saying both. He's saying that he would win under both. Yeah. He satisfies the factual predicate test as well. But this is the same. There's no dispute that this is the same time period, right? There's time overlap, but, again, Hesse says, regardless of whether the claims are based on the same time period, the same billing statement, it's irrelevant. What's relevant is the facts, the facts of the case, the claims rates. And Rainier didn't raise any of the claims that Nichols is raising. And these are distinct factual claims, distinct. There can be no dispute. Even Judge Fischer recognized it in her order. And Judge Fischer didn't even get to the res judicata issue, which we believe is reversible error. She said in her order the court need not reach the res judicata issue because the release is dispositive. Appellant says the release is not dispositive because it's not governed by contract law. It's governed by the identical factual predicate doctrine, which the Ninth Circuit itself has followed, which numerous district courts have followed, which I would like to raise in our briefing. We cited numerous district court cases in which district judges have held that even the same labor code provisions, if they're based on different facts, can give rise to different cases. And the prior settlement does not apply. So with that said, we would submit. Thank you, counsel. Thank you. Thank you. Okay. Thank you.
judges: Reinhardt, Nguyen, Settle